IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SUPERIOR INTEGRATED SOLUTIONS, INC., | CASE NO. 3:09-CV-314 |
| Plaintiff, | |
| v. | Judge Thomas M. Rose |
| THE REYNOLDS AND REYNOLDS COMPANY | Magistrate Judge Sharon L. Ovington |
| Defendant. | |

**DEFENDANT THE REYNOLDS & REYNOLDS COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S
<u>URGENT MOTION TO SHOW CAUSE</u>**

Plaintiff Superior Integrated Solutions, Inc.'s (SIS) emergency motion to the Court is more significant for what it *does not* argue than for what it *does* argue. Appropriately, SIS no longer challenges The Reynolds & Reynolds Company's ("Reynolds") right to disable SIS's software on the Reynolds Dealer Management System (the DMS, also known as the "ERA system"). Nor does SIS contend that it has any remaining contractual rights to interface third-party applications with the DMS. Similarly, SIS has offered no new factual or legal grounds for arguing that it has any contractual or common-law rights to a "wind-down" period for its software users. In sum, it appears that SIS has conceded that the primary focus of its lawsuit and injunction filings (its alleged right under the Reynolds Interface Agreement to continue providing integration services for the Reynolds ERA system post-September 21, 2009) had no contractual basis whatsoever.

Now that its contract-based avenue for relief has been properly foreclosed, SIS focuses on an "alternative" avenue for relief. SIS now moves that Reynolds be held in contempt of Court for allegedly removing SIS's software code from the ERA boxes that serve Reynolds's dealership customers, and it bases its contempt claim on representations that Reynolds made during the TRO hearing that took place on September 21, 2009. To be clear, and as is explained below, the actions taken by Reynolds are entirely consistent with Reynolds's representations to the Court and SIS during the September 21, 2009 telephonic hearing.

In any event, SIS's motion is groundless as a matter of law because SIS failed to sustain its burden to obtain a restraining order or injunction, and its motion for injunctive relief was therefore overruled. Hence, the remedy of contempt is not available to it. And SIS's motion is groundless as a matter of fact because Reynolds has taken no action that diverged in any way from its statements during the recent hearing on SIS's motion for injunctive relief. Accordingly, Reynolds respectfully requests that SIS's Motion for an Order to Show Cause be denied.

**I.     SIS Cannot Meet Its Burden to Obtain an Order Holding Reynolds in Contempt**

As a matter of law, SIS cannot establish any entitlement to an order holding Reynolds in contempt. "To justify holding a litigant in civil contempt, the moving party must establish, by clear and convincing evidence, a prima facie case that the non-moving party ***violated a definite and specific order of the court requiring it to perform or refrain from performing a particular act or acts with knowledge of the court's order***." *NEFT, LLC v. Border States Energy, LLC*, 297 Fed. Appx. 406, 412 (6th Cir. 2008) (emphasis added). Clear and convincing evidence is a not a light burden and should not be confused with the less stringent burden of proof by a preponderance of the evidence. *See Elec. Workers Pension Trust Fund of Local Union # 58 v.*

*Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003); *Coal Co. v. Local Union No. 1784, United Mine Workers of Am.*, 514 F.2d 763, 766 (6th Cir.1975).

The requirement of a definite, specific order delineating the conduct to be enjoined is fundamental to a court's power to exercise the power of contempt. *See* FED. R. CIV. P. 65(d); *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550-51 (6th Cir. 2006) ("This Court requires that the prior order be 'clear and unambiguous' to support a finding of contempt."). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974); *see also Lau v. Meddaugh*, 229 F.3d 121, 124 (2d Cir. 2000).

SIS cannot show that Reynolds violated any order of this Court requiring it to perform or refrain from performing any act because its request for injunctive injunction relief was denied, in its entirety, in light of the unambiguous language of the parties' agreement and SIS's failure to show that any of the remaining factors governing entry of an injunction weighed in its favor. *See* Entry and Order Overruling SIS's Motion for Preliminary Injunction, or, in the Alternative, for Temporary Restraining Order Pending Preliminary Injunction Hearing (Doc. #26) at 9 ("None of the factors to be considered weigh in favor of granting a TRO. . . . Therefore, SIS's Motion for Preliminary Injunction, or, in the Alternative for Temporary Restraining Order Pending Preliminary Injunction Hearing . . . is OVERRULED." (emphasis in original)).

## II. Reynolds's Actions Have Been Entirely Consistent with the Statements Made During the September 21, 2009 Injunction Hearing

Instead of identifying a "a definite and specific order of the court requiring [Reynolds] to perform or refrain from performing a particular act," SIS instead relies upon Reynolds's statements during the Court's September 21, 2009 Injunction Hearing, to the effect that Reynolds

3

intended to disable SIS's software, but would not without dealer approval remove SIS's code from the Reynolds "ERA Boxes" used by auto dealers to access the DMS.[1]

Reynolds (including its counsel) takes seriously the importance of being accurate in making representations to this Court. Indeed, Reynolds filed a motion to clarify this Court's order when it appeared to interpret statements by Reynolds's counsel as a representation that Reynolds would not disable SIS's software. In its September 25, 2009 Order clarifying its ruling, the Court recognized that, during the hearing:

> [C]ounsel for Reynolds said, "I will tell the Court right now that unless a dealership—and again we have contracts with these dealers—unless a dealership tells us that you can go ahead and remove that code, we won't remove the code."
> . . . *No statement was made by Reynolds' counsel regarding the disabling of SIS's software by other means.*

Entry and Order Clarifying Court's Entry and Order Overruling SIS's Motion for Preliminary Injunction, or, in the Alternative for Temporary Restraining Order Pending Preliminary Injunction Hearing (Doc. #28) at 2 (emphasis added).

Reynolds's actions since the Court entered its Order have been fully consistent with its statements to the Court. Although SIS has never identified any legal basis for its alleged right to maintain its code on the Reynolds system, *Reynolds has not removed a single file or a single line of SIS's code from the DMS.* See Ex. B (Affidavit of Kelly Hall) ¶ 8. Instead, on the morning of October 1, 2009, Reynolds instituted a security patch that disabled SIS's software

---

[1] For instance, at pages 39 to 40 of the transcript, the following question and answer took place between the Court and Reynolds's counsel:

> THE COURT: What happens, what happens, what happens Thursday then if the Court—
>
> MR. HARVEY: What happens Thursday is Reynolds gets to do what it had the right to do before it entered the contract. It gets to go ahead an put on security patches that will disable the integrate [sic] product that SIS has created, it will disable it from working, and the Reynolds will—then presumably SIS will be out there trying to come up with its hostile integration program that it says it has the right to do that, for all I know, maybe they have got it ready because, again, they have been on notice since January of 2009 that this could happen because we terminated this agreement. And we're going to be back to where we were precontract. And that is exactly what will happen[.]

Ex. A (Excerpt from Transcript of Teleconference before Judge Thomas M. Rose) at 39-40.

4

from integrating third-party applications to and accessing confidential information on the DMS, while leaving all of SIS's code and files in place. *See id.* As a result, users attempting to access SIS-integrated software now receive an error message stating: "Non-Reynolds Certified Code that currently resides on your server has been disabled. Please contact your third party vendor with any questions." *Id.*

This security patch does not function by removing any of SIS's intellectual property. *See id.*[2] Rather, the security patch focused on a portion of the ERA system that was set up and is managed by Reynolds—specifically, a file referred to as a "VOC file." *Id.* ¶¶ 4-6. The VOC file enables the underlying operating platform, a program known as "UniVerse" that was originally licensed by IBM,[3] to locate executable files and data files. *See id.* ¶¶ 3-4.

In order for ERA to connect with SIS's eData product, the VOC file must contain the names of SIS's executable files and data files (it must also include the names of the ERA executable files and data files). *See id.* ¶ 4. To be clear, this is **not** accomplished by placing code into the VOC file—it is accomplished by literally listing the directory and file names of the various executable files and data files (whether they are Reynolds ERA file names or SIS eData file names) into the VOC file. *See id.* ¶ 6. Indeed, any intellectual property rights associated with the VOC file and its function belong either to (a) Reynolds, which set up the VOC file as

---

[2] A directory address in a VOC file is not "intellectual property"—and is certainly not the intellectual property of SIS. Intellectual property includes only patent, trademark, copyright, and trade secret. *See Xerox Corp. v. Ariz. Digital Prods., Inc.*, No. 08-cv-6480, 2009 WL 2992036, at *7 (W.D.N.Y. Sept. 15, 2009). Although it is far from clear, perhaps SIS is claiming that the directory "pointer" is a trade secret; but this cannot be so. Among other reasons, there is nothing "secret" about the name of these files. The prefix of the files ("/US1/SUPPT01/RCI01/SIS") was in fact dictated by Reynolds. *See* Hall Aff. (Ex. B) ¶ 6. And there is nothing proprietary or secret about the file name extension chosen by SIS because the complete directory and file name is placed into the VOC file set up and maintained by Reynolds and, at all times, accessible by Reynolds as the developer of the system. *See id.* ¶ 7. *See, e.g.*, OHIO REV. CODE § 1333.61; *Brakefire, Inc. v. Overbeck*, 878 N.E.2d 84, 97 (Ohio Ct. Com. Pl. 2007). Finally, regardless of the "interest" SIS claims in this "name," Reynolds is not using it; all it has done is move the name (address) out of the VOC file. *See* Hall Aff. (Ex. B) ¶ 8.

[3] The "UniVerse" operating platform was developed by IBM and was originally licensed to Reynolds for use with ERA by IBM. *See* Hall Aff. (Ex. B) ¶ 3.

5

per the specifications of the operating platform or (b) the company that licenses to Reynolds the UniVerse operating platform that utilizes the VOC file process in order to operate.

Reynolds itself designed the system architecture from which all VOC file entries are derived. As an integral part of the ERA DMS software, Reynolds designed and created the Reynolds Certified Interface Gateway ("RCI Gateway"). *See id.* ¶ 6. This RCI Gateway provided a specific directory structure and physical location for RCI participants like SIS to install their software and data. *See id.* The directory structure created for the RCI Gateway is "/US1/SPPT01/RCI101/[partner-name]/." *Id.* The participant name in this case is "SIS," and hence the full name of SIS's programs and files for purposes of the VOC file in each case consists of the following string of characters: "/US1/SPPT01/RCI101/SIS/[SIS file name]." *Id.* SIS was permitted to enter these names (what Mr. Battista refers to in his affidavit as "pointers") in the Reynolds VOC file, which was set up by Reynolds as part of its development of the ERA.[4] *See id.* ¶¶ 5, 7.

The listing of executable and data file names (directory entries or "pointers") is not intellectual property—it is simply the names of SIS's files (and the names of Reynolds's ERA files for that matter). *See id.* ¶¶ 5-6. The following "garage sale" analogy should be helpful. When people have garage sales, they typically advertise by placing their address on garage sale signs throughout the neighborhood. Here, Reynolds set up and controls the garage sale sign (the VOC file). SIS simply placed the address for its garage sale on the VOC file. On October 1, Reynolds moved SIS's address off of the garage sale sign (the VOC file). But Reynolds did not remove SIS's garage sale property. That property (its software code) still remains at the exact

---

[4] The VOC file is not located in the "Gateway." *See* Hall Aff. (Ex. B) ¶ 7.

same physical location and address—a physical location and address that Reynolds provided SIS with in early 2009. *See id.* ¶ 9.

Moreover, although these directory names are not SIS's intellectual property, they were not deleted or removed from the system. *See id.* ¶ 8-9. They were simply moved to another location on the system. *See id.* Reynolds has not touched SIS's software code or its data files, let alone deleted or removed them. *See id.* Accordingly, Reynolds has not taken any action inconsistent with its September 21, 2009 representations to the Court.

## CONCLUSION

In sum, SIS's motion is both factually and legally groundless. Reynolds therefore respectfully requests that SIS's Urgent Motion for an Order to Show Cause be denied.

Respectfully submitted,

/s/James H. Greer
David C. Greer, Trial Attorney (0009090)
E-mail: dcg@bgllaw.com
James H. Greer, Trial Attorney (0046555)
E-mail: jhg@bgllaw.com
BIESER, GREER & LANDIS LLP
400 National City Center
6 North Main Street
Dayton, Ohio 45402-1908
Tel: 937-223-3277
Fax: 937-223-6339

GIBBS & BRUNS, L.L.P.
Grant J. Harvey, *pro hac*
Aundrea K. Frieden, *pro hac*
Angus J. Dodson, *pro hac*
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel: 713.650.8805
Fax: 713.750.0903

ATTORNEYS FOR DEFENDANT,
THE REYNOLDS AND REYNOLDS COMPANY

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing was served on counsel for the Plaintiff Superior Integrated Systems, Inc., as identified below, by electronic mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) this 2nd day of October 2009.

| | |
|---|---|
| Keven Drummond Eiber<br>keiber@brouse.com<br>Anastasia J. Wade<br>awade@brouse.com<br>BROUSE MCDOWELL<br>1001 Lakeside Avenue, Suite 1600<br>Cleveland, Ohio 44114-1151<br>Tel: (216) 830-6816<br>Fax: (216) 830-6807 | Barry Buchman<br>buchmanb@gotofirm.com<br>Gilbert LLP<br>1100 New York Avenue, NW, Suite 700<br>Washington, DC 20005<br>Tel: (202) 772-2305<br>Fax: (202) 772-2307 |

BIESER, GREER & LANDIS LLP


/s/ James H. Greer