UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SUPERIOR INTEGRATED SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:09-cv-314 |
| | ) | |
| v. | ) | Judge Thomas M. Rose |
| | ) | |
| THE REYNOLDS AND REYNOLDS COMPANY | ) ) | Magistrate Judge Sharon L. Ovington |
| Defendant | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S URGENT MOTION FOR AN ORDER TO SHOW CAUSE**

**I.   INTRODUCTION**

In its opposition to Plaintiff's Urgent Motion for an Order to Show Cause ("October 1st Motion"), Defendant The Reynolds and Reynolds Company ("Reynolds") either affirmatively concedes, or else does not dispute, the following critical points that Superior Integrated Solutions, Inc. ("SIS") established in its October 1st Motion:

- Reynolds removed, or, in Reynolds' words, "moved," SIS's "pointers" from the VOC file on the DMS boxes at thousands of dealerships;

- Reynolds did not obtain dealer permission to do so;

- Reynolds' tactic is fundamentally different than the types of "security" patches, such as "challenge questions," that Reynolds previously had discussed with the Court;

- Reynolds previously represented to the Court that "we will not touch SIS's software" absent dealer permission.  *See* Transcript of Sept. 21, 2009 hearing (Doc. 25), pp. 60-61;

- The Court memorialized Reynolds' representations in its Order of September 23, 2009, and Reynolds understood that this Order had sufficient prohibitive effect that Reynolds sought clarification of what it could, and could not, do under the Order;

- Due to Reynolds removal of SIS's pointers without dealer permission, thousands of auto dealers currently cannot use SIS's integration software, and thus cannot access critical third-party application such as ones that allow dealers to make mandatory disclosures to automobile consumers. *See* Affidavit of Phillip Battista dated Oct. 1, 2009 ("Battista Aff."), ¶¶ 6-9.[1]

As discussed below, Reynolds' attempted excuses for its behavior are fatally flawed. Using Reynolds' garage sale analogy, although SIS does not own, and never claimed to own, the street, i.e., the VOC file, where SIS creates and places the announcement of its garage sale, i.e., its "pointer" to the garage sale, the announcement/pointer is still as much SIS's property as the garage sale property itself. Given this Court's September 23rd Order, Reynolds could not remove, or "move," that SIS property without dealer permission. There was nothing ambiguous about the Court's Order in this regard.[2]

## II.   ARGUMENT

### A.   The "Pointers" And Files That Reynolds Removed Are SIS's Intellectual Property

Incredibly, despite its previous representation that it "will not touch SIS's software," Reynolds acknowledges that it has "moved *SIS's* addresses off of the garage sale sign (the VOC file)." *See* Response In Opposition to Plaintiffs' Urgent Motion to Show Cause ("Reynolds' Response"), at 6 (emphasis added); *see also id*. at 5 n.3 ("Reynolds is not using [SIS's VOC entry]; all [Reynolds] has done is move the name (address) out of the VOC file.") (emphasis added). It is unclear whether Reynolds has removed this SIS property off of the DMS boxes entirely, or moved them from the VOC file to another, hidden area on the box. Either way, one

---

[1] It is not yet known whether, and to what extent, dealers may bring lawsuits against Reynolds for the business interruptions that its conduct is causing.

[2] Reynolds' assertion that SIS has somehow conceded that contractual wind-down issues addressed in the Court's September 23rd Order is baffling. SIS's motion is designed to enforce the protection that the Order does provide to SIS even though the Order denied SIS's request for injunctive relief on the contractual wind-down issue. SIS remains free to appeal that denial within the time provided by the Rules.

thing is clear: in contrast to patches like "challenge questions," Reynolds has gone onto DMS boxes and moved SIS's, and only SIS's, software.[3]

Reynolds does not even dispute that the VOC entries that it has removed belong to SIS. Instead, Reynolds argues that its actions are excusable because it did not remove SIS's *code*, or SIS's actual "garage sale property," in Reynolds' words. *See* Reynolds' response at 6. Reynolds' argument misses the point.

As SIS established in its October 1st Motion, SIS's eData software consists of several components, including not only SIS's source code, but also the "pointers," or "VOC entries," to which the parties have been referring. *See* Battista Aff ¶¶ 3, 5; *see also* Reply Affidavit of Phillip Battista dated October 5, 2009, attached hereto as Exhibit A ("Battista Reply Aff.") ¶ 3. These pointers exist within the VOC file that exists on every DMS box. *See* Battista Reply Aff. ¶ 4. The VOC file is used by the DMS's operating system, here, the UniVerse operating system, to locate data and programs. *See* Battista Reply Aff. ¶ 5.

When a software developer such as SIS creates a software file or compiles source code within a DMS operating system, the developer creates its own unique VOC entries within the system's VOC file. *See* Battista Reply Aff. ¶ 6. Thus, within a VOC file, there usually are multiple VOC entries created by different developers. *See id.* These VOC entries, or pointers, are part of the developer's software and are essential to a dealer being able to retrieve data or run programs, because the pointers direct the operating system to those programs and data. *See id.* As an industry white paper notes:

> When a UniVerse file is created using command defaults, three things come into existence. These are the data portion of the file, the dictionary portion of the file,

---

[3] The fact that Reynolds created a self-serving error message to appear on dealers' DMS screens, namely, a message that uses the word "disabled" rather than "moved," has no bearing on Plaintiff's October 1st Motion. *See* Reynolds' Response, at 5.

3

>and the VOC entry that describes the physical location of the other two, as well as specifying the name that users use to access that file.

*See* Ray Wurlod, "UniVerse File Dictionaries," Master Class. Available at http://home.iprimus.com.au/raywurlod/universe/File%20Dictionaries.htm#_Toc51988861 (last accessed October 5, 2009) (emphasis added).[4]

Reynolds itself indirectly acknowledges, in the Affidavit of Kelly Hall ("Hall Aff."), that VOC entries are part of a developer's software, and that they are critical to the operation of the developer's overall software program. *See* Hall Aff. ¶ 5. Specifically, Ms. Hall notes that, "Software (here ERA) will not function under the Universe operating environment unless a VOC file [entry] is created as part of the development of the software. . . . If this information is not placed into the VOC, UniVerse may not execute programs or find data files." *See id*. Although Ms. Hall mistakenly refers to the existence of multiple VOC files on a single DMS (when there actually is only one VOC file for each system area), her basic point about how software such as SIS's eData product will not function absent the creation of a VOC file entry, or pointer, as part of the development of that software proves SIS's point.

Thus, using a more accurate version of Reynolds' analogy, although SIS does not own the common VOC file, i.e., the street, where SIS (and other developers) place their pointers, i.e., their garage sale signs, SIS does own its pointers/signs themselves, which are part of SIS's software. Reynolds is no more entitled to move those pointers than it is entitled to move SIS's source code.[5]

---

[4] Reynolds insinuation that SIS has no intellectual property rights in the eData VOC entries that it creates when it compiles its eData source code is baseless. The RIA provides that "Distributor [SIS] retains the ownership of the SIS eData Product and all copies thereof, and hereby claims patent, copyright, trade secret and confidential information protection in the SIS eData product." *See* RIA, Ex. E, § I.4, at p. 20.

[5] Contrary to its insinuations, Reynolds does not own (or develop) the VOC file. *See* Battista Reply Aff. ¶ 7. The VOC file is an integral part of the UniVerse operating system that UniVerse designs to be utilized by software developers. *See id*.; *see also* UniVerse manual, at I-47 – I-48, attached as Ex. A to the Battista Reply Aff.

4

B.      Reynolds' Representations and the Court's September 23, 2009 Order

It is undisputed that Reynolds represented to the Court that it would not remove SIS's software from DMS boxes without dealer permission. Indeed, Reynolds stated that "we will not <u>touch</u> SIS's <u>software</u>." *See* Transcript of Sept. 21, 2009 hearing (Doc 25), at pp. 60-61 (emphasis added).

The Court incorporated Reynolds' representations into its September 23rd Order denying SIS's motion for injunctive relief, and relied upon those representation in evaluating the balance of harms. Specifically, in discussing the "Substantial Harm To Others" factor, the Court's Order referenced Reynolds' representation that "it will not remove SIS's software from its Dealer Management Systems unless the Dealer asks it to do so." (Doc. #26 at 8 n.1).

Contrary to Reynolds' current, revisionist assertions, both parties understood, from the outset, that the Court's September 23rd Order had binding affect as to what Reynolds could and could not do when the RIA expired. On the same day that the Court issued the Order, SIS advised Reynolds in writing that SIS expected Reynolds to abide by the provisions of the Order that protect SIS from certain actions by Reynolds. *See* letter dated Sept. 23, 2009, from Barry I. Buchman, counsel for SIS, to Grant J. Harvey, counsel for Reynolds, attached hereto as Exhibit B. The next day, because Reynolds was concerned about the Order's reference to not "disabling" SIS's software, Reynolds asked the Court to clarify the Order by removing that reference. If Reynolds did not believe that the Order precluded it from taking certain actions, there would have been no need for Reynolds to file its clarification motion.

Reynolds thus has "violated a definite and specific order of the court" precluding it from removing SIS software from dealer DMS boxes without dealer permission. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987). Significantly, "Willfulness is not an

5

element of civil contempt, so the intent of a party to disobey a court order is irrelevant to the validity of [a] contempt finding." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).

The Court, therefore, should also evaluate whether Reynolds "took all reasonable steps within [its] power to comply with the court's order." *See Electrical Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Electric Service Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)).

Given that the parties already have discussed with the Court, at length, less draconian measures that Reynolds could have taken to compete with SIS, namely "challenge questions," Reynolds hardly can claim that it has taken "all reasonable steps within [its] power to comply with the court's order." *See id.*

Moreover, even if this Court were to determine, as a technical matter, that a formal finding of contempt is not warranted, this Court still has the inherent power to impose sanctions against Reynolds. The Supreme Court has recognized the inherent powers "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See Chambers v. Nasco*, 501 U.S. 32, 43 (1991); *see also Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "The trial court's options, in terms of what kind of sanctions it may impose pursuant to its inherent power, are broad." *Allstate Ins. Co. v. Smith*, 2007 WL 2254730 (N.D. Ohio 2007) (sanctioning party for failing to attend case management conference). The inherent power to sanction even includes the power to impose injunctive relief. *See, e.g.*, *People of the State of New York v. Operation Rescue National*, 80 F.3d 64, 66 (2d Cir. 1996) (issuing sanctions in the form of injunctive relief); *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986) (same). Thus, even short of a formal contempt finding, this Court has the ability to award the

6

sanctions that SIS has requested, including an order requiring Reynolds to immediately restore SIS's VOC entries onto DMS boxes.

## III.  CONCLUSION

For the foregoing reasons and for the reasons stated in Plaintiff's October 1st Motion and the supporting memorandum and affidavit, SIS requests that the Court grant its Urgent Motion for an Order to Show Cause.

October 5, 2009                                            Respectfully submitted,

/s/ Keven Drummond Eiber
Keven Drummond Eiber (0043746)
keiber@brouse.com
Anastasia J. Wade (0082797)
awade@brouse.com
BROUSE MCDOWELL
1001 Lakeside Avenue, Suite 1600
Cleveland, Ohio 44114-1151
Tel: (216) 830-6816
Fax: (216) 830-6807


Of Counsel:
Barry I. Buchman (*pro hac vice*)
buchmanb@gotofirm.com
Gilbert LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Tel: (202) 772-2305
Fax: (202) 772-2307

## CERTIFICATE OF SERVICE

I hereby certify the foregoing was filed electronically this day. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. In addition, a true and accurate copy of the filing has been served electronically on the following counsel pursuant to the agreement of the parties regarding manner of service.

Grant Harvey
Aundrea K. Frieden
Joseph Dodson
Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, TX 77002

David C. Greer
James H. Greer
BIser, Greer & Landis LLP
400 National City Center
6 North Main Street
Dayton, OH 45402

/s/ Keven Drummond Eiber
Keven Drummond Eiber (0043746)