# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| SUPERIOR INTEGRATED SOLUTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) Case No.  3:09-cv-314 |
| | ) |
| v. | ) Judge Thomas M. Rose |
| | ) |
| THE REYNOLDS AND REYNOLDS COMPANY, | ) Magistrate Judge Sharon L. Ovington |
| | ) |
| | ) Oral Argument Requested |
| Defendant | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S PARTIAL MOTION TO DISMISS

Reynolds and Reynolds, Inc.'s ("Reynolds") partial motion to dismiss should be denied because it is premised entirely on a flawed premise: that the liquidated damages provisions of the Reynolds Interface Agreement ("RIA") are valid on their face, as a matter of law.  Based on this false premise, Reynolds argues that because Superior Integrated Solutions ("SIS") has not alleged that it paid any fees under the RIA, the breach of contract claim must be dismissed.  As discussed below, the liquidated damages provisions are not valid because they bear no reasonable relation to the damages that actually could foreseeably flow from a breach of the RIA, and because SIS alleged that Reynolds intentionally breached the RIA.  There is no dispute that SIS has plead that Reynolds breached the RIA and that SIS has suffered significant damages as a result.

## I.      __Statement of Facts__

SIS's complaint alleges that Reynolds has breached the RIA by blocking or otherwise interfering with the interface between SIS's integration software and the DMS used by numerous auto dealers.  *Id.* at ¶ 35.  While breaching the RIA, Reynolds simultaneously took specific measures to allow other integration providers to continue their interfacing with these dealers' DMS.  *Id.* at ¶ 37.

The complaint further alleges that Reynolds has embarked on a plan to remove, disable, destroy, or otherwise interfere with the interfacing between SIS's integration software and the DMS at approximately 4,000 dealerships across the country when the RIA expires on September 21, 2009.  *Id.* at ¶ 26.  SIS has informed Reynolds that this action would violate the RIA by not allowing SIS a reasonable wind-down period at the conclusion of the agreement.[1]  *Id.* at ¶¶ 28-29.  Nevertheless, Reynolds has made clear its intention to interfere with the interface between SIS's integration software and these DMS when the RIA expires.  *Id.* at ¶ 61.

According to the complaint, Reynolds existing and planned future interference will injure SIS by eliminating a very substantial portion of its business revenue.  *Id.* at ¶ 53.  It will also cause damage to SIS's goodwill and business reputation among its direct customers and auto dealers.  *Id.* at ¶ 62.

## II.     __Legal Standard__

In *Ashcroft v. Iqbal*, the Supreme Court recently elaborated on the legal standards applicable to a motion to dismiss for failure to state a claim. --- U.S. ----, 129 S.Ct. 1937, 1949 (May 18, 2009).  First, the court must "accept as true all of the allegations contained in a

---

[1] The merits of SIS's interpretation of the RIA (i.e., whether Reynolds is entitled to terminate SIS's interface rights at the conclusion of the RIA) have not been brought before the Court by Reynolds' limited motion to dismiss.

complaint," though "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the presumption of truth. *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Second, a complaint must state a claim for relief that is "plausible on its face," and a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50 (citing *Twombly*, 550 U.S. at 556, 570).

The plausibility standard "is not akin to a 'probability requirement'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556).  Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Gilles v. Garland*, 281 Fed. Appx. 501, 511 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 512).  A court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal citation omitted).

III.    **SIS has Stated a Claim for Which Relief Can be Granted Because the Liquidated Damages Provisions are Invalid and Unenforceable**

A.    **The Liquidated Damages Provisions are Invalid and Unenforceable Because They Operate as a Penalty**

Although, "as a general rule," Ohio law allows parties to a contract to apportion or limit damages in the event of a breach, public policy prevents the enforcement of a liquidated damages provision when the provision operates as a penalty. *Lake Ridge Academy v. Carney*, 613 N.E.2d 183, 187 (Ohio 1993).  "The characteristic feature of a penalty is its lack of proportional relation

3

to the damages which may actually flow from failure to perform under a contract." *Id.* at 188 (internal quotation omitted). *See also Samson Sales, Inc. v. Honeywell, Inc.*, 465 N.E.2d 392, 393-94 (Ohio 1984) ("where the amount specified [in a liquidated damages provision] is manifestly inequitable and unrealistic, courts will ordinarily regard it as a penalty").

Ohio courts use a three part test to determine whether a liquidated damages provision is valid: (1) damages must be uncertain as to amount and difficult to prove; (2) the provision as a whole must not be so "manifestly unconscionable, unreasonable, and disproportionate in amount" as to justify the conclusion that it does not express the true intention of the parties; and (3) the contract must be consistent with the conclusion that it was the intention of the parties that "damages in the amount stated should follow from the breach thereof." *Samson Sales, Inc.*, 465 N.E.2d at 394 (quoting *Jones v. Stevens*, 145 N.E. 894 (Ohio 1981)). The latter two factors inform the analysis of whether the liquidated damages provision is a penalty. *See Samson Sales, Inc.*, 465 N.E.2d at 394 (finding liquidated damages provision to be an unenforceable penalty even though the damages are "patently estimable"); *Wis-Bay City v. Bay City* Partners, No. 3:08-cv-1730, 2009 WL 1661649 at *8. (N.D. Ohio June 12, 2009) (finding liquidated damages provision to be an unenforceable penalty even though the first prong "cuts both ways").

Here, the liquidated damages provisions in the RIA are "manifestly. . .  unreasonable, and disproportionate in amount" to the actual damages that SIS faces, and thus they constitute an unenforceable "penalty" under Ohio law. SIS has plead that it faces the loss of a substantial portion of its business revenue and corporate goodwill. *See* Compl. at 53, 62. Yet, under the liquidated damages provisions in the RIA, SIS would not be entitled to <u>any</u> monetary relief. The liquidated damages provisions in the RIA limit damages to the amount that SIS pays to Reynolds for the Interface. Under Exhibit D to the RIA, the fees for the Interface are all listed as "TBD,"

and the certification fee is set at $0.  Thus, the RIA, by its express terms, provides for no recovery if one of the parties breaches the agreement.  Because the RIA's limit on damages is "manifestly disproportionate" to SIS's actual damages, it operates as a penalty.  *See Cad Cam Inc v. Underwood*, 521 N.E.2d 498, 502 (Ohio App. 2d Dist 1987) (liquidated damages provision awarding employer half of employee's salary if employee violated a noncompete provision was unenforceable because it was "unrealistically out of proportion to the actual damages likely to be sustained" by the employer); *Wis-Bay City* 2009 WL 1661649 at *8 (liquidated damages provision charging a $4 million penalty for any late payments on a $9 million loan was unenforceable because it was "unreasonable and disproportionate" to any potential loss); *Berlinger v. Suburban Apartment Management Co.*, 454 N.E.2d 1367, 1371 (Ohio App. 8th Dist. 1982) (liquidated damages provision imposing a $50 per day fine on tenants who parked motorcycles at apartment complex was unenforceable because it "does not bear a reasonable relationship to any loss which might foreseeably be sustained").

Similarly, the liquidated damages provision is not consistent with the conclusion that the parties intended "damages in the amount stated should follow from the breach thereof."  *Samson Sales, Inc.* at 394.  In *Samson Sales, Inc.*, a pawn shop owner sued his alarm system company after his store was burglarized resulting in a loss of nearly $70,000 in merchandise.  *Id.* at 393-94.  The Ohio Supreme Court refused to enforce a liquidated damages provision that would have limited the store owner's damages to $50.  *Id.*  The court found it to be "beyond comprehension" that a $50 limit on damages could "evince a conscious intention of the parties to consider, estimate, or adjust the damages that might reasonably flow from the negligent breach of the agreement."  *Id.* at 394.  Here, because Exhibit D to the RIA identifies fees, and thus damages, of "TBD" and "$0", the parties did not even contemplate what the liquidated damages would be,

much less whether those damages were a reasonable approximation of the damages that might flow from a breach.  Accordingly, the liquidated damages provision "fails to evince a conscious intention of the parties to consider, estimate, or adjust the damages that might reasonably flow from the negligent breach of the agreement."  *Samson Sales, Inc.*, 465 N.E.2d at 394.

      **B.**     **The Liquidates Damages Provisions Also Are Not Enforceable because Reynolds has Engaged in Intentional Breaches of the RIA**

Reynolds' motion also cannot survive based on a notion that the liquidated damages provisions in the RIA are instead exculpatory provisions because SIS has alleged that Reynolds intentionally breached the RIA, and Reynolds cannot contract around liability for intentional conduct.  Under Ohio law "[a]lthough a limitation-of-liability clause for damages caused by one's own negligence may be valid and enforceable, it is ineffective where the party to the contract seeking protection under the clause has [engaged in] "willful or wanton misconduct." *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 375 N.E.2d 410, 416 (Ohio 1978).

In *Solid Gold Jewlers v. ADT Security Systems, Inc.*, 600 F.Supp.2d 956, 959 n.2 (N.D. Ohio 2007) the Northern District of Ohio found that the plaintiff's allegations that the defendant "intentionally breached" a contract for a security system installation precluded a judgment on the pleadings of the plaintiff's breach of contract claim.  The court explained that exculpatory provisions are invalid when the breaching party has committed "a willful or reckless breach." *Id.*

Here, SIS has alleged that Reynolds has intentionally breached the RIA.  First, Reynolds has breached the RIA by blocking or interfering with the interface between SIS's integration software and the DMS used by Reynolds' dealers even before the RIA's September 21, 2009 expiration date.  Compl. at ¶ 35.  While Reynolds was blocking SIS's integration, it simultaneously took specific measures to allow other integration providers to continue their

interface with Reynolds' DMS.  Compl. at ¶ 37.  The fact that Reynolds singled-out SIS for

disruption indicates that Reynolds' breach of the RIA was intentional.  At the very least, SIS is

entitled to the presumption of this "reasonable inference" from the factual allegations in the

complaint.  *See Basset*, 528 F.3d at 430 (6th Cir. 2008).  SIS has also alleged that Reynolds

embarked on a plan to break the interface between SIS's integration software and the DMS at

approximately 4,000 dealerships across the country, effective September 21, 2009.  Compl. at

¶ 26.  SIS informed Reynolds that this action would violate the RIA, but Reynolds has made

clear its intention to continue its plan to disable SIS's interfacing at the termination of the RIA.

*Id.* at 28-29.  SIS has plainly alleged that Reynolds' termination of its interface rights at the

conclusion of the RIA would be an intentional breach of the RIA.  As such, SIS would be

entitled to recover damages caused by Reynolds intentional breach, notwithstanding any

exculpatory provisions in the RIA.

> **C.**     **The Court Need not Determine the Validity of the Liquidated Damages
> Provisions at this Stage in the Proceedings**

Reynolds cites no precedent where courts granted a motion to dismiss a breach of

contract claim due to the existence of a liquidated damages provision or an exculpatory

provision.  This omission is hardly surprising.  Whether such provisions are valid and

enforceable typically involves factual questions that preclude resolution on a dispositive motion.

In *Hitachi Medical Systems America, Inc. v. Trinity Health Care LLC*, No. 1:06-cv-3072, 2008

WL 1809080 at *3-4 (N.D. Ohio 2008), the Northern District of Ohio declined to enter summary

judgment on the enforceability of a liquidated damages provision because there were disputed

factual questions as to whether the plaintiff's damages were difficult to ascertain and whether the

amount of liquidated damages was reasonable.  Similarly, in *Ohio Cas. Ins. Co. v. D and J*

*Distributing and Manufacturing, Inc.*, No. L-08-1104, 2009 WL 2356849 (Ohio App. 6th Dist. July 31, 2009) the Ohio Court of Appeals declined to enter summary judgment on the enforceability of an exculpatory provision because there were disputed factual questions as to whether the defendant's conduct was wanton and willful.

Given that disputes regarding the validity of liquidated damages provisions and exculpatory provisions are typically not ripe for adjudication even at the summary judgment stage, such disputes are even less appropriate to resolve at the motion to dismiss stage.

**IV.**   <u>**Conclusion**</u>

For all the foregoing reasons, Reynolds partial motion to dismiss should be denied.

October 7, 2009                                     Respectfully submitted,

<u>/s/ Keven Drummond Eiber</u>
Keven Drummond Eiber (0043746)
keiber@brouse.com
Anastasia J. Wade (0082797)
awade@brouse.com
BROUSE MCDOWELL
1001 Lakeside Avenue, Suite 1600
Cleveland, Ohio 44114-1151
Tel: (216) 830-6816
Fax: (216) 830-6807

Of Counsel:

Barry Buchman (*pro hac vice*)
buchmanb@gotofirm.com
Gilbert LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Tel: (202) 772-2305
Fax: (202) 772-2307

**CERTIFICATE OF SERVICE**

I hereby certify the foregoing was filed electronically this day.  Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  In addition, a true and accurate copy of the filing has been served electronically on the following counsel pursuant to the agreement of the parties regarding manner of service.

Grant Harvey
Aundrea K. Frieden
Joseph Dodson
Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, TX 77002

David C. Greer
James H. Greer
Biser, Greet & Landis LLP
400 National City Center
6 North Main Street
Dayton, OH 45402

/s/ Keven Drummond Eiber
Keven Drummond Eiber (0043746)